UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO CESAR VARONA,<br><br>         Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement; JESUS ROCHA, Acting Field Office Director, San Diego Field Office; and CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, San Diego, California.<br><br>         Respondents. | Case No.: 3:25-cv-3328-JES-SBC<br><br>**ORDER:**<br><br>**(1) GRANTING COUNT ONE OF THE PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241;**<br><br>**(2) DENYING AS MOOT COUNT TWO AND THREE OF THE PETITION, AND MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**[ECF Nos. 1, 2]** |

  Before the Court is Petitioner Julio Cesar Varona's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and Motion for a Temporary Restraining Order ("TRO"). ECF No. 1, ("Pet."); ECF No. 2, ("TRO"). The Petition and TRO were

filed on November 26, 2025. *Id*. Respondents filed their Response on December 3, 2025. ECF No. 6, ("Res."). Petitioner filed his Traverse on December 4, 2025. ECF No. 7. Thereafter, the Court took the matter under submission.

For the reasons set forth below, the Court **GRANTS** Count One of the Petition for Writ of Habeas Corpus, **DENIES AS MOOT** Counts Two and Three of the Petition, and Motion for Temporary Restraining Order.

## I. BACKGROUND

Petitioner is a citizen and national of Cuba, who entered the United States in 1995, and was later convicted for sexual battery of a minor. *See* ECF No. 6-4, ("Res. Dec."), ¶ 4. On September 26, 2001, Petitioner was booked into Immigration and Customs Enforcement ("ICE") custody in Miami, Florida *Id*. ¶ 6. On September 26, 2001, an Immigration Judge ordered Petitioner removed to Cuba, following his stipulated request for a removal order. *Id*. ¶ 7; ECF No. 6-1. On February 5, 2002, ICE released Petitioner from custody on an Order of Supervision. Res. Dec. ¶ 8.

On October 22, 2025, ICE arrested Petitioner after being identified for an enforcement operation and re-detained him at the Krome Detention Center. *Id*. ¶ 9. After his arrest, Petitioner was served with a written Notice of Revocation of Release ("Notice") and given an informal interview. *Id*.; ECF No. 6-2. Since his re-detention, ICE has attempted to effectuate Petitioner's removal. *See* Res. Dec. ¶¶ 9–12.

After repatriation efforts to Cuba proved unsuccessful, ICE identified Mexico as a third country where Petitioner may be removed. *Id*. ¶¶ 10–11. On November 16, 2025, ICE served Petitioner with a Notice of Removal, notifying him of its intent to remove him to Mexico. *Id*. ¶ 11; ECF No. 6-3. On November 23, 2025, ICE transferred Petitioner to the Otay Mesa Detention Center in San Diego, California to execute his removal to Mexico on November 28, 2025. Res. Dec. ¶ 12. After ICE was notified of Petitioner's habeas petition and declaration attesting that he feared removal to Mexico, it canceled his removal to Mexico and coordinated with U.S. Citizenship and Immigration Services ("USCIS") to schedule a screening to determine Petitioner's eligibility for protection under § 241(b)(3)

of the Immigration and Nationality Act and the Convention Against Torture. *Id.* ¶¶ 13–14. Should USCIS determine that Petitioner is not eligible for protection, Respondents will reinitiate its efforts to remove Petitioner to Mexico. *Id.* ¶ 15.

Petitioner seeks habeas and injunctive relief from the Court by asserting the following claims: (1) In revoking Petitioner's release, Respondents have failed to comply with their own regulations, which violates the APA and the Fifth Amendment of the U.S. Constitution; (2) Petitioner's re-detention violates *Zadvydas v. Davis* because for the last eleven years, the Government has been unable to remove him and cannot show that there is a "significant likelihood of removal in the reasonably foreseeable future." 533 U.S. 678, 701 (2001); and (3) Respondents' practice of removing noncitizens, such as Petitioner, to a third country without providing an opportunity to assert fear of persecution or torture before an immigration judge also violates the Due Process Clause of the Fifth Amendment. Pet. at 8-9.

## II.     LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Habeas corpus is "perhaps the most important writ known to the constitutional law ... affording as it does a swift and imperative remedy in all cases of illegal restraint or

confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

### III.   DISCUSSION

The Court finds that the Parties' arguments with respect to whether: (1) the Government failed to comply with its own regulations when it revoked Petitioner's release; and (2) Petitioner's detention comports with *Zadvydas*, are analogous to those raised in the Court's recent decision in *Saengphet v. Noem, et al.*, No: 25-cv-2909-JES-BLM, 2025 WL 3240808, at *2-9 (S.D. Cal. Nov. 20, 2025). The Court, therefore, elects to follow the reasoning it stated in *Saengphet* and incorporates it by reference. *Id*.

#### A.   Jurisdiction

As a threshold matter, the Court finds that 8 U.S.C. § 1252's jurisdiction stripping provisions do not bar this Court from considering Petitioner's habeas petition. Thus, the Court has jurisdiction to hear the Petition.

The Court finds that the Parties' arguments with respect to whether: (1) the Government failed to comply with its own regulations when it revoked Petitioner's release; and (2) Petitioner's detention comports with *Zadvydas*, are analogous to those raised in the Court's recent decision in *Saengphet v. Noem, et al.*, No: 25-cv-2909-JES-BLM, 2025 WL 3240808, at *2-9 (S.D. Cal. Nov. 20, 2025). The Court, therefore, elects to follow the reasoning it stated in *Saengphet* and incorporates it by reference. *Id*.

#### B.   Count One

The Court finds that the Government failed to comply with its self-propagated regulations that govern the revocation of a noncitizen's release. The Court finds further that this resulted in a violation of the Due Process Clause of the Fifth Amendment. As a result, Count One of the Petition will be granted, and Respondents will be ordered to release Petitioner.

//

The Court finds that the Notice, which contains Respondents' reasons for revoking Petitioner's release, is defective. This is because the Notice's stated justifications fail to articulate any facts, that are specific to Petitioner, which constitute changed circumstances in support of ICE's determination that there is "significant likelihood that the alien may be removed in the reasonably foreseeable future." *See* ECF No. 6-2 at 2; 8 C.F.R § 241.13(2). Such justifications are conclusory and, therefore, fall short of what the regulation requires. *See id.*; *see also Sarail A. v. Bondi*, --- F. Supp. 3d ----, 2025 WL 2533673, at *10 (D. Minn. 2025).

### C.  Counts Two and Three and Temporary Restraining Order

Having ruled on the Petition on the merits, the Court declines to address Counts Two and Three, or apply the *Winter* factors to determine whether to issue a TRO. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Court, therefore, **DENIES AS MOOT** Counts Two and Three of the Petition and the Motion for Temporary Restraining Order.

### IV.  CONCLUSION

In sum, the Government failed to follow its own regulations when it revoked Petitioner's release because it failed to provide him with adequate notice of its reasons for doing so. This resulted in substantial prejudice to Petitioner in the informal interview, when he was supposed to challenge the revocation of his release. The Government's noncompliance resulted in a violation of Petitioner's Constitutional due process rights. Accordingly, Petitioner's habeas Petition is **GRANTED** and Petitioner is **ORDERED RELEASED**.

Based on the foregoing:

(1)  The Court **GRANTS** Count One of the Petition;

(2)  As Petitioner's sought after relief was granted, with respect to Count One, the Court **DENIES AS MOOT** Counts Two and Three, and the Motion for Temporary Restraining Order;

(3)  Respondents are **ORDERED** to immediately release Petitioner from custody, under the same conditions as previously imposed, and to **FILE**

1  a Notice of Compliance within ten days to confirm when the Petitioner has been released;

2  (4) In the event Petitioner seeks further habeas relief arising from the Government's conduct related to its future execution of the removal order, Petitioner must **FILE** a new Petition; and

3  (5) The Clerk of Court is **DIRECTED** to close this suit.

**IT IS SO ORDERED.**

Dated: December 8, 2025

Honorable James E. Simmons Jr.
United States District Judge